Robert O'CONNOR, Plaintiff

v.

CITY OF MINNEAPOLIS, MINN., Defendant.

No. 4–59 Civ. 173.

United States District Court
D. Minnesota,
Fourth Division.

April 1, 1960.

Hall, Smith, Hedlund, Juster, Forsberg & Merlin, by William Merlin, Minneapolis, Minn., for plaintiff.

G. V. Johnson, Asst. City Atty., Minneapolis, Minn., for defendant.

DEVITT, Chief Judge.

The plaintiff, a resident of Wisconsin, sues under the Civil Rights Act, 42 U.S.C.A. § 1983, and under common law to recover damages arising from his alleged illegal arrest and false imprisonment by Minneapolis City Police officers in August, 1957. He also seeks our mandatory injunction directing the defendant to request the Federal Bureau of Investigation to expunge from its files any record of the incident.

The defendant moves for dismissal of the damage claim and for summary judgment on the injunction request.

■ The complaint in brief alleges that the city, "as a matter of established policy and deliberate intent," arrested the plaintiff without probable cause to believe that he had committed a crime, that the city falsely imprisoned him for two days without informing him of the charge and without allowing him to contact anyone outside the jail, and that the city released to the local news media and national wire services the story that he was the "Number-one Suspect" in the shooting of Minneapolis Police Officers Fossum and Canfield, when such charges were false and without reasonable foundation.

The complaint further alleges that the defendant notified the Federal Bureau of Investigation that the plaintiff was under arrest for suspicion of homicide and has failed to correct this notification.

The plaintiff seeks damages for mental suffering, injury to health and loss of employment. Because the plaintiff's normal work requires security clearance, he also seeks our order directing the Minneapolis Police Department to notify the F.B.I. that the charges were false and to request the F.B.I. to expunge its records as to this incident. Unless this is done, the plaintiff claims he will be unable to obtain suitable employment in the future.

In so far as the damage action is concerned, the decided federal cases almost uniformly deny recovery of damages against a municipality for alleged violations of civil rights occurring in the exercise of the city's governmental functions. Cuiksa v. City of Mansfield, 6 Cir., 1957, 250 F.2d 700, certiorari denied, 1957, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 813; Agnew v. City of Compton, 9 Cir., 1956, 239 F.2d 226, certiorari denied, 1957, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910; Cobb v. City of Malden, 1 Cir., 1953, 202 F.2d 701; Charlton v. City of Hialeah, 5 Cir., 1951, 188 F.2d 421; Hewitt v. City of Jacksonville, 5 Cir., 1951, 188 F.2d 423, certiorari denied, 1951, 342 U.S. 835, 72 S.Ct. 58, 96 L.Ed. 631; Egan v. City of Aurora, D.C.N.D.Ill.1959, 174 F.Supp. 794; Graves v. City of Bolivar, D.C.W.D.Mo.1957, 154 F.Supp. 625; Shuey v. State of Michigan, D.C.E.D.Mich.1952, 106 F.Supp. 32; but see, Burt v. City of New York, 2 Cir., 1946, 156 F.2d 791.

These cases reflect the same common law doctrine of sovereign immunity

which has led the Minnesota Supreme Court to hold that municipal corporations are generally not liable for the wrongful acts of their police officers in making arrests or detaining prisoners. Gullikson v. McDonald, 1895, 62 Minn. 278, 64 N.W. 812; see, Lamont v. Stavanaugh, 1915, 129 Minn. 321, 152 N.W. 720, L.R.A.1915E, 460; 13 Dunnell Minn. Dig. § 6809 (1954); 18 McQuillan, Municipal Corporations §§ 53.79, 53.80 (3rd ed. 1950).

I can see no special circumstance or exceptions which would remove this situation from the control of the well-settled principles. The claim for damages under 42 U.S.C.A. § 1983 and under common law is therefore dismissed.

In support of its motion for summary judgment denying the requested order dealing with the F.B.I. records, the defendant has filed an affidavit of Milton Winslow, Superintendent of the Minneapolis Police Department. This affidavit states that the F.B.I. was notified by letter on August 26, 1958, that Mr. O'Connor was released without charge and was absolutely not involved in the case being investigated at that time; that the data sent by the Minneapolis Police to the F.B.I. was returned; that all data pertaining to Mr. O'Connor has been marked "No record to be given anyone—for protective evidential purposes only;" that after the commencement of this action, the F.B.I. was requested to report any information in its files concerning the plaintiff to the Minneapolis Police Department, and that the reply report from the F.B.I., dated November 6, 1959, contained no information or reference to any arrest or other contact with police officials of the City of Minneapolis at any date. Attached to the affidavit are exhibit A, a copy of the letter of August 26, 1958, notifying the F.B.I. that O'Connor was not involved in the crime, and exhibit B, the letter from the F.B.I. accompanying the return of fingerprint data to the Minneapolis Police Department.

 It seems to me that the defendant has already done all within its power to correct this unfortunate incident. But the plaintiff apparently questions the veracity of the affidavit filed and desires an opportunity to file responsive affidavits. Thus, with a fact issue apparently present, I may not grant summary judgment, Kennedy v. Bennett, 8 Cir., 1958, 261 F.2d 20, but will finally dispose of this issue at trial.